# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARRIOTT OWNERSHIP RESORTS, INC.; MARRIOTT VACATIONS WORLDWIDE CORPORATION; MARRIOTT RESORTS, TRAVEL COMPANY, INC.; and MARRIOTT RESORTS HOSPITALITY CORPORATION, <br><br>        Plaintiffs, <br><br>     vs. <br><br> MICHAEL KEVIN FLYNN and MARLA KAY FLYNN, <br><br>        Defendants. | CIVIL NO. 14-00372 JMS-RLP <br><br> ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PRELIMINARY INJUNCTION, DOC. NO. 6; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION, DOC. NO. 10 |

## ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PRELIMINARY INJUNCTION, DOC. NO. 6; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION, DOC. NO. 10

## I. INTRODUCTION

Between 2004 and 2013, Defendants Michael Kevin Flynn and Marla

Kay Flynn ("Defendants" or "the Flynns") purchased from Plaintiff Marriott

Ownership Resorts, Inc. ("MORI") multiple weekly timeshare interests in two

Hawaii resorts, Marriott's Maui Ocean Club in Lahaina, Maui ("Maui Ocean

Club"), and Marriott's Ko Olina Beach Club in Kapolei, Oahu ("Ko Olina Club"). In June 2010, MORI made changes to the timeshare program. The Flynns, individually and on behalf of a potential class, claim that these changes breached the timeshare agreements and violated state law. The changes allegedly made it more difficult to use their interests and diminished their value. The Flynns submitted an August 6, 2014 Arbitration Demand ("Arbitration Demand") of their claims based on arbitration provisions in the timeshare documents.

MORI and its affiliates co-Plaintiffs Marriott Vacations Worldwide Corporation; Marriott Resorts, Travel Company, Inc.; and Marriott Resorts Hospitality Corporation (collectively, "Plaintiffs" or "Marriott"), contend that the Flynns' claims are not subject to mandatory arbitration. Marriott brought this action for declaratory and injunctive relief, seeking a ruling that the dispute is not subject to arbitration and/or an order enjoining the Flynns' Arbitration Demand.

Currently before the court are (1) Plaintiffs' Motion for Summary Judgment or, in the Alternative, for Preliminary Injunction, Doc. No. 6; and (2) Defendants' Motion to Compel Arbitration, Doc. No. 10. Based on the following, the court GRANTS in part and DENIES in part Plaintiffs' Motion and GRANTS in part and DENIES in part Defendants' Motion. At the threshold, an arbitrator must determine whether the primary dispute is subject to mandatory

arbitration, and whether class arbitration is allowed.  Some aspects of the

Arbitration Demand, however, are clearly not arbitrable.

## II.  <u>BACKGROUND</u>

**A.**    **Factual Background**

Between 2004 and 2007, the Flynns purchased four separate "weeks

ownership" timeshare interests in two- and three-bedroom units at the Ko Olina

Club and the Maui Ocean Club.  Doc. No. 7, Pls.' CSF ¶ 1.  In 2013, the Flynns

purchased an additional weeks ownership timeshare interest at the Ko Olina Club.

Under the purchase agreements, the Flynns' weeks ownership interests entitle

them to reserve and use their weeks at the Maui Ocean and Ko Olina Clubs during

the respective "use year" associated with each ownership interest.  *See* Doc. No. 1,

Compl., Pls.' Exs. A - D, Purchase Agreements; and Pls.' Exs. F & G, Maui Ocean

Club Vacation Ownership Program Declaration of Covenants, Conditions and

Restrictions, and Ko Olina Beach Club Vacation Ownership Program Declaration

of Covenants, Conditions and Restrictions (collectively, the "Timeshare

Agreements"), Ch. 1 ¶ E.2, Ch. 3 ¶ 3.7.[1]

In June 2010, MORI (and/or other of the Plaintiff Marriott affiliates)

---

[1]  The Maui Ocean Club Timeshare Agreement was recorded in the Hawaii Bureau of
Conveyances on October 7, 1999.  Doc. No. 1, Compl. Ex. F.  The Ko Olina Beach Club
Timeshare Agreement was recorded on September 24, 2001.  *Id.* Ex. G.

created a "points-based" timeshare model. This new model encompasses numerous Marriott Vacation Club resorts and an exchange program through which both new owners of beneficial interest points through the new model and existing weeks use owners -- who opt to exchange their use weeks for an allotment of points -- use those points to book vacations. The Flynns opted not to exchange their use weeks for points (*i.e.*, not to enroll in the new program). They contend that the creation of this new points-based model caused them increased difficulty in exercising their use weeks rights at the Maui Ocean and Ko Olina Clubs, and has resulted in substantial devaluation of their timeshare interests.

In their August 6, 2014 Arbitration Demand, the Flynns allege that, prior to 2010, MORI owned tens of thousands of unsold timeshare interests in various timeshare resorts, for which it was obligated to pay a share of the maintenance costs. Marriott transferred this unsold inventory to a Florida land trust (the "MVC Trust") and began selling timeshare interests from this trust. The Flynns contend that MORI established the points-based timeshare model in order to sell these less desirable interests, and to avoid certain financial obligations and additional costs related to development of current and new properties. The Arbitration Demand alleges that the Flynns, and other similarly-situated weeks owners, have difficulty reserving their weeks at their home resorts because they

now compete with owners in the new programs, who receive preferential treatment and superior reservation and use rights. Doc. No. 1, Compl. Ex. E ¶¶ 42, 49, 53-56. Marriott has "exponentially increas[ed] [the] number of" timeshare owners who may reserve nights, such that the number of owners "exceed[s] the number of nights available for use by those owners[.]" *Id.* ¶ 102. In short, "Marriott has substantially diminished the value" of weeks owner's interests. *Id.* ¶ 60. They claim MORI has violated a Hawaii state law that prohibits timeshare companies from selling more weeks or nights than are available in a timeshare plan. *Id.* ¶¶ 52, 100-102.

The Flynns make such allegations on behalf of a proposed class, defined as "all natural persons who purchased and now own weeks ownership interest(s) in the Marriott Hawaii Resorts; that is Maui Ocean Club, Ko Olina Beach Club, Kauai Beach Club, Kauai Lagoons -- Kalanipuu, and Waiohai Beach Club." *Id.* ¶ 62. That is, the Flynns seek to represent weeks owners for three *other* Hawaii-resort Marriott timeshare projects, besides the Maui Ocean Club and Ko Olina Beach Club.

///

///

///

**B.     The Arbitration Demand's Five Counts and Relief Sought**

The Arbitration Demand alleges five Counts, set forth in detail below:

*1.     Count I -- Breach of the Hawaii Timeshare Agreements*

This Count asserts, in part, that "in return for consideration paid" in

the form of payment for weeks ownership interests, fees, and taxes, MORI:

> promised to provide timeshare interests in the form of
> weeks ownership, as well as to provide the services
> necessary in order for [Defendants] . . . to exercise and
> receive the full benefit of their use rights, such as
> reservation and exchange services and general
> operational services by [Plaintiffs].

Doc. No. 1, Compl. Ex. E ¶ 74.  It further alleges that MORI "promised to convey

its interests in the . . . Resorts and to terminate its financial obligations as an owner

in a manner consistent with the Hawaii Timeshare Agreements."  *Id.* ¶ 75.

Nevertheless:

> [b]y introducing the new point-based timeshare model,
> [MORI] failed to perform and breached the timeshare
> agreements by:  (1) materially and adversely affecting
> the Class members' use rights in their weeks ownership
> interests, (2) no longer operating the weeks ownership
> timeshare model as the Class members bargained for,
> (3) not effectively operating the services necessary to
> ensure that the Class members are able to utilize their
> weeks ownership interests, and (4) diluting the use and
> value of the Class members' interests by providing more
> advantages to Points-Based Owners, utilizing an
> arbitrary points value system, and actively undermining
> weeks ownership interests in advertisements.

*Id.* ¶ 77. Further, although the Timeshare Agreements "specifically enumerate those rights reserved by MORI as developer" including "the right for MORI to convey its interests to the associations," *id.* ¶¶ 78a-b, "rather than exercising its right . . . MORI conveyed its . . . ownership interests to the MVC Trust in bulk (thus creating an entirely new class of owners that competes with Weeks Owners and leading to the diminution in value of weeks ownership interests) [thereby] breach[ing] the Hawaii Timeshare Agreements." *Id.* ¶¶ 78c-d.

### 2. *Count II -- Breach of the Implied Covenant of Good Faith and Fair Dealing*

The Flynns assert that Marriott "rendered imperfect performance and unfairly interfered with the Class members' rights to receive the benefits of the contract, that is, their rights to the full use and enjoyment of their weeks ownership intersts." *Id.* § 86. As a result, and "as fully illustrated" in the Arbitration Demand, Marriott "breached the implied covenant of good faith and fair dealing." *Id.* ¶ 82.

### 3. *Count III -- Violation of Hawaii Consumer Protection Statutes*

The Flynns assert that Marriott violated Hawaii Revised Statutes ("HRS") §§ 481-1, 480-24, and 481A-1, *et seq*. *Id.* § 89. More specifically, they assert that Marriott engaged in conduct constituting unlawful business practices and acts and deceptive trade practices by (1) "violat[ing HRS] Chapter

514E['s] . . . one-to-one use-right to use-night requirement," (2) preventing Class members from "receiving the benefits they bargained for" and "tak[ing] full advantage of their ownership interests," (3) "misle[ading] the Class members with regards to the product, services, and/or property they were to receive upon purchase of their weeks ownership timeshare interests," (4) misrepresenting the "characteristics, uses, . . . benefits[,] . . . standard, quality, or grade" of "advertised services" while "inten[ding] not to supply reasonably expectable public demand," and (5) fraudulently concealing "[m]aterial facts . . . by [such] inaccurate representations" that were "likely to deceive reasonable consumers." *Id.* §§ 92, 94-95.

### 4. *Count IV -- Violation of Hawaii Timeshare Statute, HRS § 514E-1, et seq.*

The Flynns assert that Marriott violated a statutory requirement that it not "offer or dispose of timeshare units or . . . interests . . . unless the one-to-one use-right to use-night requirement is satisfied <u>and continues to be satisfied for the duration of the Hawaii timeshare plans</u>." *Id.* § 100 (emphasis in original).[2] They

---

[2] HRS § 514E-8.6(a) provides: "A developer shall not offer or dispose of a time share unit or a time share interest unless the one-to-one-use-right to use-night requirement is currently satisfied and will continue to be satisfied for the duration of the time share plan." In turn, HRS § 514E-1 defines "[o]ne-to-one use-right to use-night requirement" as meaning "that the sum of the nights which owners are entitled to use in a given year shall not exceed the number of nights available for use by those owners during that year."

assert that by "implement[ing] the new timeshare model[,] . . . the sum of nights which owners are entitled to use in a given year has exceeded the number of nights available for use by those owners during that year." *Id.* § 101.

5.     ***Count V -- Unfair and Deceptive Practices in Violation of Chapters 480 and 514E***

The Flynns assert that Marriott violated state law by misrepresenting (1) "the amount of time or period of time the timeshare units . . . will be available to any purchaser," (2) "the size, nature, [and] extent. . . of the timeshare units . . . [and] of services incident to the timeshare unit," and (3) "failing to honor and comply with all provisions of the contracts or reservation agreements with purchasers." *Id.* § 106. Count Five asserts that these "unfair and deceptive practices" under the Hawaii Time Sharing Plans Act constitute a violation of HRS ch. 480 (regarding unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce). *Id.*

6.     ***The Relief Sought in the Arbitration Demand***

Given these five Counts, the Arbitration Demand seeks the following primary relief:

• "An order certifying this action to proceed as a class action and appointing the Flynns and their counsel to represent the Class;"

• "a declaratory award determining that creation of the MVC Trust, transfer of Marriott's inventory of unsold weeks in the Marriott

Hawaii Timeshare Resorts, and creation of the Destination Program and Exchange Program constituted breaches of the Hawaii Timeshare Agreements;"

- "a declaratory award determining that creation of the MVC Trust, transfer of Marriott's inventory of unsold weeks in the Marriott Hawaii Timeshare Resorts, and creation of the Destinations Program and Exchange Program constituted a violation of the Hawaii Time Sharing Plans Act -- especially the statute's one-to-one use-right to use-night requirement;"

- an award of damages in an amount equal to the loss of value of the Claimants' and members of the Class' weeks ownership interests in the market place, or alternatively in an amount equal to the cost of [beneficial interests] sufficient to equal the use rights they enjoyed prior to the creation of the MVC Trust, the Destinations Program and the Exchange Program[.]"

*Id.* at 29-30.

## C.     Arbitration Provisions

The timeshare agreement for each timeshare resort property consists of a lengthy "Declaration of Covenants, Conditions and Restrictions."  For example, the timeshare agreement for the Maui Ocean Club consists of fifteen chapters, establishing parameters such as (1) the nature of the project, (2) the ownership interests and reservation and use rights, (3) the timeshare association and management of the program, (4) exchange programs, (5) use provisions, (6) transfer of ownership interests, (7) finances, (8) responsibility for tenants and visitors, (9) default, (10) insurances, (11) maintenance and repair, (12) annexation,

amendment, and termination of the program, and (13) developer's obligations.

Doc. No. 7-4, Pls.' Ex. A at 3-11.

Contained within Chapter 14 (regarding "Developer's Obligations")

of the Maui Ocean Club timeshare agreement is the following arbitration

provision, which the Flynns invoked in their Arbitration Demand:

> Any disagreement or controversy between the Developer
> and the Association with respect to the question of the
> fulfillment of the Developer's obligations [(a)] to
> complete and pay for any Improvement included in the
> Program,[3] [(b)] to pay for Basic or Special Charges as
> the Owner of the Developer Ownership Interests in the
> Program or [(c)] to pay the costs of operating the
> Program and maintaining it under a Subsidy Agreement
> shall, at the request of either party, be submitted to
> arbitration in accordance with the commercial arbitration
> rules of the American Arbitration Association. . . .
> Issues of arbitrability shall be determined in accordance
> with the federal substantive and procedural laws relating
> to arbitration; all other respects of the dispute shall be
> interpreted in accordance with, and the arbitrator shall
> apply and be bound to follow, the substantive laws of the
> State of Hawaii.

Doc. No. 1, Compl. Ex. F ¶ 14.1.  This same clause is located in § 15.1 of the Ko

Olina timeshare agreement.  *Id.* Ex. G ¶ 15.1.[4]  The timeshare agreements also

---

[3]  Pursuant to the Timeshare Agreements, MORI is the "Developer," the "Association" is comprised of all unit owners, and the "Program" is "the common scheme and plan" with regard to timeshare interests and units.  Doc. No. 1, Compl., Exs. F & G, Timeshare Agreements at 2-3.

[4]  The timeshare agreements for the Kauai Beach Club and Kauai Lagoons - Kalanipuu do
(continued...)

11

provide that "[e]ach owner is automatically a member of the Association," Doc.

No. 1, Compl. Exs. F & G ¶ 4.2, and that "any Member shall have the right to

pursue or defend any" "lawsuit, arbitration or other legal proceedings relating to

the Program or Resort" "on his own behalf, or on behalf of . . . any other Member,

if the law generally grants to the Member this right or if such Member is directly

affected." *Id.* ¶ 4.7.[5]

**D.    Procedural Background**

On August 21, 2014, Marriott filed its Complaint seeking a

declaratory judgment that it has no obligation to arbitrate the parties' dispute, and

---

[4](...continued)
not contain arbitration provisions.  Doc. No. 23, Pls.' Opp'n at 10 (referring to Doc. Nos. 7-6 & 7-7).

[5]  A different (additional) arbitration provision in the Ko Olina Beach Club Agreement (and, as represented by Defendants' counsel at the November 3, 2014 hearing, also in the Maui Beach Club Agreement) reads, in part, as follows:

> 13.14  ALTERNATIVE DISPUTE RESOLUTION.  In the event of the occurrence of any controversy or claim arising out of, or related to this Declaration or to any alleged construction or design defects pertaining to the Improvements on the Property ("dispute"), . . . the parties to the dispute agree to submit the dispute to mediation[.] . . .  If the dispute is not resolved through mediation, the dispute shall be resolved by arbitration pursuant to this paragraph and the then-current rules and supervision of the American Arbitration Association.

Doc. No. 1, Pls.' Ex. G at 66.  This provision was not invoked by the Flynns.  Accordingly, this Order focuses on the arbitration clause or clauses that were invoked -- § 14.1 of the Maui Ocean Club Agreement and § 15.1 of the Ko Olina Agreement.

to enjoin the Flynns' August 6, 2014 Arbitration Demand.

On September 17, 2014, Marriott filed its Motion for Summary Judgment or, in the Alternative, for Preliminary Injunction. Doc. No. 6. On September 18, 2014, the Flynns filed their Motion to Compel Arbitration and Stay Action. Doc. No. 10. Oppositions to the Motions were filed on October 10, 2014. Doc. Nos. 23, 24. Corresponding Replies were filed on October 20 and 21, 2014. Doc. Nos. 29, 30. A hearing was held on November 3, 2014. Following the hearing, Marriott filed a supplemental brief on November 7, 2014, Doc. No. 37-2, to which the Flynns responded on November 24, 2014. Doc. No. 42.

## III. <u>STANDARDS OF REVIEW</u>

### A. **Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., which applies to arbitration agreements in contracts involving transactions in interstate commerce, provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2; *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) ("With limited exceptions, the [FAA] governs the enforceability of arbitration agreements in contracts involving interstate commerce."). Under the FAA, "any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Nevertheless, "the federal policy in favor of arbitration does not extend to deciding questions of arbitrability," that is, the question "who decides whether a claim is arbitrable." *Oracle Am., Inc. v Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (emphasis omitted).

In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, "the district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc*., 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) ("Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.") (quotation marks and citations omitted).

**B.     Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477

15

U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere

allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is

'material' only if it could affect the outcome of the suit under the governing law."

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248). When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor" (citations omitted)).

## IV. <u>ANALYSIS</u>

Marriott's Motion primarily seeks a declaration that the Flynns'

claims as set forth in their Arbitration Demand are not arbitrable, and a

corresponding Order enjoining further arbitration. The Flynns' Motion essentially

seeks the opposite. Both Motions raise the same question -- whether Marriott is

obligated to arbitrate claims made in the Arbitration Demand. The answer turns

on whether the Arbitration Demand falls within the identified arbitration clauses in

the Maui Ocean Club and Ko Olina Timeshare Agreements.  The court, however, must first address an important threshold question -- whether an arbitrator or the court must make those determinations.

## A.    The Arbitrator Determines Whether the Flynns' Claims in their Arbitration Demand Must Be Arbitrated

In general, "gateway questions of arbitrability, such as whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy," are issues for the court and not the arbitrator to decide. *Momot*, 652 F.3d at 987 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002)).  This rule flows from "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Id.* (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)).  As a result, in the normal course, the court determines the issue of arbitrability by applying "ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944.

But parties may agree to arbitrate the question of arbitrability.  "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Id*. at

943 (internal citations omitted).  Given the presumption that arbitrability is an issue for the court, however, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).  "Such '[c]lear and unmistakable "evidence" of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'"  *Momot*, 652 F.3d at 988 (quoting *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 79-80 (2010) (Stevens, J., dissenting) (citing *First Options*, 514 U.S. at 946)).

Applying these principles, there is no evidence of a course of conduct suggesting an agreement to arbitrate -- Marriott has objected to arbitration at every opportunity.  Instead, the Flynns argue that the parties agreed that the issue of arbitrability should be determined by an arbitrator because the Maui Ocean Club and Ko Olina arbitration provisions provide that disputes between "the Developer and the Association"[6] "shall . . . be submitted to arbitration in accordance with the commercial arbitration rules of the American Arbitration Association [("AAA")]."

---

[6] The Timeshare Agreements authorize each timeshare owner the right to enforce the Arbitration Agreement and to represent other owners should the Program Operator not do so. Doc. No. 1, Compl. Exs. F & G ¶ 4.7 (providing that "any Member shall have the right to pursue or defend any [legal proceeding, including arbitration, relating to the Program or Resort] on his own behalf, or on behalf of the Association or any other Member, if . . . such Member is directly affected").

Doc. No. 1, Compl. Exs. F ¶ 14 & G ¶ 15.1.  In turn, Rule 7(a) of the AAA

Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power

to rule on his or her own jurisdiction, including any objections with respect to the

existence, scope, or validity of the arbitration agreement or to the arbitrability of

any claim or counterclaim."  *See* AAA Commercial Arbitration Rules (available at

http://www.adr.org).  The court agrees.

      "Virtually every circuit to have considered the issue has determined

that incorporation of the [AAA's] arbitration rules constitutes clear and

unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Oracle*

*Am., Inc.*, 724 F.3d at 1074.  *See, e.g.*, *Petrofac, Inc. v. DynMcDermott Petroleum*

*Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("The express adoption of

[AAA] rules presents clear and unmistakable evidence that the parties agreed to

arbitrate arbitrability."); *T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc*., 592

F.3d 329, 345 (2d Cir. 2010) (holding that when "parties explicitly incorporate

rules that empower an arbitrator to decide issues of arbitrability, the incorporation

serves as clear and unmistakable evidence of the parties' intent to delegate such

issues to an arbitrator"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir.

2009) (determining that AAA Commercial Rule 7(a) gave the arbitrator the power

to determine arbitrability); *Qualcomm Inc. v. Nokia Corp*., 466 F.3d 1366, 1373

19

(Fed. Cir. 2006) (similar); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005) (similar); *But see Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 777 & n.1, 780 (10th Cir. 1998) (determining that despite incorporation of AAA commercial rules into manufacturing agreement, subsequent settlement agreement created ambiguity regarding the parties' intent to delegate to arbitrator issue of arbitrability).

Here, the arbitration clauses at issue (agreements for Maui Ocean Club and Ko Olina) unambiguously incorporate the commercial arbitration rules of AAA.  Applying binding authority, it is thus established (clearly and unmistakably) that the parties to the Timeshare Agreements intended to delegate the question of arbitrability to an arbitrator.  *See, e.g.*, *Oracle Am., Inc*., 724 F.3d at 1074-75.

But Marriott argues that the sentence immediately following the provision incorporating the commercial arbitration rules of AAA creates an ambiguity.  That language states:

> Issues of arbitrability shall be determined in accordance with the federal substantive and procedural laws relating to arbitration; all other respects of the dispute shall be interpreted in accordance with, and the arbitrator shall apply and be bound to follow, the substantive laws of the State of Hawaii.

Doc. No. 1, Compl., Pls.' Exs. F ¶14.1 & G ¶ 15.1.[7]  Marriott contends that this language specifically chooses federal law to decide how arbitrability is determined, construing it to mean that the parties chose the default rule under federal law that courts are to determine arbitrability.  But Marriott's argument is circular.  Incorporating federal law means not only that courts generally are to decide questions of arbitrability, but also that the parties are free to agree to allow an arbitrator to decide those questions.  That is, incorporating federal law means that if parties choose to submit disputes to arbitration "in accordance with the commercial arbitration rules of the American Arbitration Association," then they "clearly and unmistakably" agreed to arbitrate arbitrability.  *Oracle Am., Inc.*, 724 F.3d at 1074-75.

Indeed, the language at issue is obvious "boilerplate" in response to *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior*

---

[7]  So, the key language is:

> Any disagreement or controversy between the Developer and the Association with respect to the question of the fulfillment of the Developer's obligations . . . shall, at the request of either party, be submitted to arbitration in accordance with the commercial arbitration rules of the American Arbitration Association.  The arbitration shall be held in Honolulu, Hawaii.  Issues of arbitrability shall be determined in accordance with the federal substantive and procedural laws relating to arbitration; all other respects of the dispute shall be interpreted in accordance with, and the arbitrator shall apply and be bound to follow, the substantive laws of the State of Hawaii.

*University*, 489 U.S. 468 (1989). Among other matters, *Volt* interpreted a

contractual provision requiring arbitration in accordance with AAA's rules, but

with a choice of law provision selecting the "law of the place where the Project is

located [California]." *Id.* at 470. *Volt* held that this choice of law meant that the

parties had agreed not only to substantive California law, but also to be governed

by California arbitration procedures (and not the FAA), even if the state law

arbitration provisions differ from the FAA. *Id.* at 474-75.

> Where, as here, the parties have agreed to abide by state
> rules of arbitration, enforcing those rules according to
> the terms of the agreement is fully consistent with the
> goals of the FAA, even if the result is that arbitration is
> stayed where the Act would otherwise permit it to go
> forward. By permitting the courts to "rigorously
> enforce" such agreements according to their terms . . . we
> give effect to the contractual rights and expectations of
> the parties, without doing violence to the policies behind
> by the FAA.

*Id.* at 479 (internal citation omitted). *See Cape Flattery, Ltd. v. Titan Maritime,*

*LLC*, 647 F.3d 914, 919 (9th Cir. 2011) ("[B]ased on *Volt*, contracting parties have

the power to agree to apply non-federal arbitrability law.").

Given *Volt*, inadvertently incorporating state-law arbitration

provisions (when otherwise choosing state substantive law) "can be avoided by

modifying the choice of law provision used in agreements containing arbitration

clauses to make clear the parties' intent to be governed by the federal law of

arbitration."  John R. Ackermann, Jr., *Arbitrating Licensing Disputes: Putting the "Binding" in Binding Arbitration*, 15 Licensing Law & Business Report 133,137 (Mar.-Apr. 1993).  The precise sentence at issue -- "Issues of arbitrability shall be determined in accordance with the federal substantive and procedural laws relating to arbitration; all other aspects of this Agreement shall be interpreted in accordance with, and the arbitrator shall apply and be bound to follow the substantive laws of, the State of ____ " -- is meant to "deal[] with the '*Volt* problem' by ensuring that questions of arbitrability are determined under the FAA and not state law."  *Id*. at 143.  *See also, e.g.*, Archis A. Parasharami & Kevin Ranlett, *Supreme Court Addresses* Volt's *Choice-of-Law Trap:  Is the End of the Problem in Sight?*, 64 Dispute Resol. J. 22, 26 (May-July 2009) (instructing that, after *Volt*, "drafters should take care to specify precisely which procedures will govern the enforcement of arbitration agreements.  A choice-of-law clause should not be read to select state arbitration procedures if the agreement explicitly provides that the interpretation and enforcement of the arbitration provision shall be governed by the FAA."); Joseph T. McLaughlin, *Alternate Dispute Resolution; Trial Evidence, Civil Practice, and Effective Litigation Techniques in the Federal Courts*, C774 ALI-ABA 355, 391-92 (Feb. 25, 1993) ("Thus *Volt* has an immediate impact on every existing and future arbitration agreement governed by

U.S. law.  From now on, if a party to a contract containing an arbitration agreement or a contractual choice of law provision wants to avoid possible delays in the courts, the contract should state explicitly that the parties intend to be bound by federal law applicable to arbitration and not by any state law which may be contrary.").

In short, the sentence simply ensures that the FAA applies in determining arbitrability -- whether addressed by a court or an arbitrator.  It does not mean that the court must determine arbitrability.  Marriott argues that Hawaii and federal arbitration law do not conflict, and thus there would be no need to include the clause for that purpose.  *See* Doc. No. 37-2, Pls.' Supp. Mem. at 2 (citing *Howard Fields & Assocs. v. Grand Wailea Co.*, 848 F. Supp. 890, 895 (D. Haw. 1993)).  State law, however, can change.  And even if there is no evidence that Marriott included the sentence in the relevant timeshare agreements specifically to address any particular aspect of Hawaii arbitration law, the clause provides no basis to distinguish binding and persuasive precedent -- *Oracle America, Inc.*, 724 F.3d at 1074-75, and similar opinions from other Circuits -- holding that incorporating the commercial arbitration rules of AAA is clear and unmistakable evidence of an agreement that an arbitrator is to determine arbitrability.

**B.    The Arbitrator Is to Determine Whether the Parties Agreed to Allow Class Arbitration**

Alternatively, Marriott asks the court to address *class action* arbitration separately.  That is, although the court determines that an arbitrator is to determine arbitrability in general (as a matter of contractual interpretation), Marriott asserts that the court should nevertheless declare as a matter of law that the Timeshare Agreements' arbitration clauses do not include class-action arbitration, given the nature of such actions.  *See, e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) ("[C]lass-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator."); *AT&T Mobility LLC v. Concepcion*, --- U.S.----, 131 S. Ct. 1740, 1750, 1751-53 (2011) (reasoning that "changes brought about by the shift from bilateral arbitration to class-action arbitration are fundamental," and stating that "[a]rbitration is poorly suited to the higher stakes of class litigation" and that class arbitration "is not arbitration as envisioned by the FAA") (internal quotation marks and citations omitted).

The analysis begins by distinguishing between (1) "questions of arbitrability," which -- as discussed above -- are generally for a court to decide (unless there is "clear and unmistakable" evidence otherwise), and (2) "other kinds

of general circumstances where parties would likely expect that an arbitrator would decide the gateway question." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). "Thus 'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* (citation and internal quotation marks omitted). In other words,

> [Courts] decide whether the availability of classwide arbitration is a "question of arbitrability." If yes, it is presumed that the issue is for judicial determination unless the parties clearly and unmistakably provide otherwise. If the availability of classwide arbitration is not a "question of arbitrability," it is presumptively for the arbitrator to resolve.

*Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 330 (3d Cir. 2014) (citations and some quotation marks omitted), *petition for cert. filed* (U.S. Nov. 25, 2014) (No. 14-625). *See also, e.g.*, *In re A2P SMS Antitrust Litig.*, 2014 WL 2445756, at *5 (S.D.N.Y. May 29, 2014) (explaining similar two-step process).

### 1. A Significant Split in Authority Exists as to Whether Class Arbitration Is a "Procedural" or "Substantive" Question

The Supreme Court has not specifically resolved whether the arbitrability of a demand for class arbitration is a "question of arbitrability" (and thus presumptively a question for a court) or one of "procedure" (and thus a question left to an arbitrator). *See Oxford Health Plans LLC v. Sutter*, --- U.S. ----,

26

133 S. Ct. 2064, 2068 n.2 (2013) ("[T]his Court has not yet decided whether the availability of class arbitration is a question of arbitrability."). But in *Green Tree Financial Corporation v. Bazzle*, 539 U.S. 444 (2003), a plurality concluded that the decision whether an arbitration agreement encompasses class arbitration "concerns contract interpretation and arbitration procedures," and thus "should be for the arbitrator, not the courts[.]" *Id.* at 453.

> The question here -- whether the contracts forbid class arbitration -- does not fall into this narrow exception [where courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter]. It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties. . . . [T]he question is not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter*. Rather the relevant question here is what *kind of arbitration proceeding* the parties agreed to. That question does not concern a state statute or judicial procedures. It concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question.

*Id.* at 452-53 (internal citations omitted).

Many courts have since relied on *Bazzle* to conclude that the question is "procedural," and should be decided by an arbitrator. *See, e.g.*, *A2P SMS Antitrust Litig.*, 2014 WL 2445756, at *10; *Harrison v. Legal Helpers Debt Resolution, LLC*, 2014 WL 4185814, at *4 (D. Minn. Aug. 22, 2014); *Kovachev v. Pizza Hut, Inc.*, 2013 WL 4401373, at *2 (N.D. Ill. Aug. 15, 2013); *Lee v.*

*JPMorgan Chase & Co.*, 982 F. Supp. 2d 1109, 1112 (C.D. Cal. 2013); *Hesse v. Sprint Spectrum L.P.*, 2012 WL 529419, at *2 (W.D. Wash. Feb. 17, 2012); *cf. Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 577 (7th Cir. 2006) ("We find based on *Howsam* that the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve."); *Fantastic Sams Franchise Corp. v. FSRO Ass'n*, 683 F.3d 18, 25 (1st Cir. 2012) (holding that an arbitrator decides whether an agreement permits "associational arbitration" because the question is not a "question of arbitrability").[8]

Two Circuit courts have held otherwise, determining that whether class arbitration is available is indeed a "question of arbitrability" for a court (absent clear and unmistakable evidence otherwise). *See Opalinski*, 761 F.3d at 332; *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013). These decisions rely primarily on reasoning in *Stolt-Nielsen* and *Concepcion* describing fundamental differences between bilateral arbitration and class arbitration. *See Opalinski*, 761 F.3d at 334 ("[W]e read the Supreme Court [in *Stolt-Nielsen* and *Concepcion*] as characterizing the permissibility of classwide arbitration not solely

---

[8] "Associational arbitration" has been defined as "whether an association could represent its members in an arbitration proceeding." *In re A2P SMS Antitrust Litig.*, 2014 WL 2445756, at *9.

as a question of procedure or contract interpretation but as a substantive gateway dispute qualitatively separate from deciding an individual quarrel. Traditional individual arbitration and class arbitration are so distinct that a choice between the two goes . . . to the very type of controversy to be resolved."); *Reed Elsevier*, 734 F.3d at 598 ("[T]he Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one."). The parties, however, have not cited a Ninth Circuit opinion ruling one way or the other, and the court's research has not revealed such a decision.

Ultimately, however, this court need not decide which of these competing viewpoints to follow -- even if the court assumes that this is a "question of arbitrability," the record establishes clearly and unmistakably that Marriott agreed that an arbitrator is to decide the question of class arbitration.

**2. *There Is Clear and Unmistakable Evidence of an Intent to Submit the Question of Class Arbitration to the Arbitrator***

*Stolt-Nielsen* "declined to hold that an arbitration agreement must *expressly* state that the parties agree to class arbitration." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011). That is, "[t]he Court contemplated that an arbitration agreement may contain an implicit agreement to authorize class arbitration, but an 'implicit' agreement . . . may not be 'inferred solely from the fact of the parties' agreement to arbitrate.'" *Id.* (quoting *Stolt-Nielson*, 559 U.S. at

29

685 (brackets omitted)).  *See also, e.g.*, *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1011 (N.D. Cal. 2011) ("[T]he Supreme Court has never held that a class arbitration clause must explicitly mention that the parties agree to class arbitration in order for a decisionmaker to conclude that the parties *consented* to class arbitration.") (citation omitted).[9]

Here, as discussed above with arbitration in general, the relevant Timeshare Agreements provide that certain disputes "shall . . . be submitted to arbitration in accordance with the commercial arbitration rules" of the AAA.  Doc. No. 1, Compl., Exs. F ¶ 14 & G ¶ 15.1.  In turn, Rule 7(a) of the AAA commercial arbitration rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *Id.*  And more particularly, an agreement to the AAA's commercial arbitration rules also includes an agreement to the AAA Supplementary Rules for Class Arbitration.  These Supplementary Rules provide, in part:

---

[9]  Plausible contractual grounds exist for determining that the agreements contemplated class arbitration.  Paragraph 4.7 of the relevant time share agreements provides that "any Member shall have the right to pursue or defend any" "lawsuit, arbitration or other legal proceedings relating to the Program or Resort" "on his own behalf, or on behalf of . . . any other Member, if the law generally grants to the Member this right or if such Member is directly affected."  Doc. No. 1, Compl. Exs. F & G ¶ 4.7.  The meaning of this clause is a matter of contractual interpretation -- a question for the arbitrator.

These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

AAA Suppl. Rule 1(a). The Supplementary Rules further provide for

"construction of the arbitration clause," as follows:

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award.

AAA Suppl. Rule 3.

Many courts have held that "consent to any of the AAA's substantive

rules also constitutes consent to the Supplementary Rules and, if a dispute that

otherwise would be arbitrated under the AAA rules involves a purported class,

then the proceeding is governed by both the AAA rules and the AAA

31

Supplementary Rules for Class Arbitrations." *Chesapeake Appalachia, LLC v. Burkett*, 2014 WL 5312829, at *7 (M.D. Pa. Oct. 17, 2014) (citing *Bergman v. Spruce Peak Realty, LLC*, 2011 WL 5523329, at *3 (D. Vt. Nov.14, 2011) (relying upon the Supplementary Rules when referring class arbitration issue to the arbitrator, where parties agreed to "the Commercial Arbitration Rules of the AAA"); *S. Commc'ns Servs., Inc. v. Thomas*, 829 F. Supp. 2d 1324, 1336-38 (N.D. Ga. 2011) (holding that AAA Wireless Industry Arbitration Rules "incorporate the AAA Supplementary Rules for Class Arbitrations, which gave the arbitrator the power to decide whether the Arbitration Clause implicitly authorized class proceedings"); and *Yahoo! Inc*., 836 F. Supp. 2d at 1011-12 (holding that parties' agreement to AAA National Rules for the Resolution of Employment Disputes also constituted agreement to the Supplementary Rules)). *See, also, e.g.*, *Price v. NCR Corp.*, 908 F. Supp. 2d 935, 945 (N.D. Ill. 2012) ("[T]he parties' agreement to proceed 'under the AAA's rules' incorporates the Supplementary Rules for Class Arbitrations."); *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 635 (5th Cir. 2012) ("[C]onsent to any of the AAA's substantive rules also constitutes consent to the Supplementary Rules."), *abrogated in part on other grounds in Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013).

And it follows that -- as with arbitration in general as set forth in

*Oracle America*, 724 F.3d at 1075, and similar cases discussed above -- incorporation of the Supplementary Rules constitutes clear and unmistakable evidence of an intent to have an arbitrator address the question of class arbitrability. *Yahoo! Inc*., 836 F. Supp. 2d at 1011-12; *Price*, 908 F. Supp. 2d at 945 ("By adopting AAA Supplementary Rule 3 in their Agreement, the parties agreed that an arbitrator, and not this Court, would determine whether the Agreement authorizes class arbitration."); *Reed*, 681 F.3d at 635-36 ("The parties' consent to the Supplementary Rules, therefore, constitutes a clear agreement to allow the arbitrator to decide whether the party's agreement provides for class arbitration.").

Marriott argues that it cannot have agreed to incorporate the Supplementary Rules because they were not promulgated until 2003 -- well after the relevant Timeshare Agreements were recorded in the Hawaii Bureau of Conveyances in 1999 and 2001. But the operative dates are when the Flynns purchased their interests in the Timeshare Agreements, which occurred in 2004, 2007 and 2013 -- *after* the Supplementary Rules were promulgated. It was at those times when they were subject to the Timeshare Agreements. It was at those times that Marriott and the Flynns entered into contractual relationships as to the Timeshare Agreements.

And, in any event, Rule One of the 1996 AAA Commercial Arbitration rules (as with the current rules) provided that "[t]hese rules *and any amendment of them* shall apply in the form obtaining *at the time the demand for arbitration or submission agreement is received* by the AAA." *See Hodge v. Top Rock Holdings, Inc.*, 2011 WL 1527010, at *5 (E.D. Mo. Apr. 20, 2011) (quoting Rule One) (emphasis added); *Supply Basket, Inc. v. Global Equip. Co.*, 2014 WL 2515345, at *3 (N.D. Ga. June 4, 2014) (reviewing AAA rules in effect at time of execution of agreements in 1999, 2000, and 2006 and determining that they all "include the following provision or some equivalent thereof: . . . These rules *and any amendment thereof shall apply in the form obtaining when the arbitration is initiated*").

Thus, even under Marriott's theory that the relevant time was the recording of the Timeshare Agreements (in 1999 and 2001), Marriott agreed at that time to be bound by the AAA rules, as amended, "in the form obtaining at the time the demand for arbitration . . . is received." That is, it agreed to be bound by the rules in existence in 2014 -- which include the AAA Supplementary Rules pertaining to Class Arbitrations. *See Sleepy's LLC v. Escalate, Inc.*, 2010 WL 2505678, at *2 & n.28 (S.D.N.Y. June 18, 2010) (applying 2009 AAA rules to 1998 agreement, based on Rule One); *Hodge*, 2011 WL 1527010, at *5 ("[B]y

designating the AAA Rules in the arbitration clause, and not designating any

alternate set of procedural rules or expressing any limitation on the applicability of

Rule 1 which was in effect at the time of the execution of the Agreements, the

parties contracted via a theory of incorporation that the current Rules of the AAA

would govern arbitration matters at the time arbitration was demanded."); *JSC*

*Surgutneftegaz v. President & Fellows of Harvard Coll.*, 167 F. App'x 266, 268

(2d Cir. 2006) ("[Plaintiff's] argument that the 1996 version of the AAA's

Commercial Rules does not contain such a clause [empowering an arbitrator to

determine issues of arbitrability] is inapposite because Rule 1 of that version

provides that the 'rules and any amendment of them shall apply in the form

obtaining at the time the demand for arbitration or submission agreement is

received by the AAA.'"); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d

1263, 1273 (7th Cir. 1976) (similar).

Accordingly, given the AAA Supplementary Rules regarding Class

Arbitrations, Marriott clearly and unmistakably agreed to have an arbitrator

determine whether class arbitration is allowed. *See, e.g.*, *Oracle Am.*, 724 F.3d at

1075; *Reed*, 681 F.3d at 635-36; *Yahoo! Inc.*, 836 F. Supp. 2d at 1011-12; *Price*,

908 F. Supp. 2d at 945.

**C.    There Is No Basis for Arbitrating Claims as to the Kauai Beach Club Resort and Kauai Lagoons -- Kalanipuu Resort**

Lastly, Marriott asks the court to declare that the Arbitration Demand may not proceed to the extent the Flynns seek to arbitrate claims as to the Kauai Beach Club Resort and Kauai Lagoons -- Kalanipuu Resort (timeshare regimes that are both defined by timeshare agreements that, as the Flynns now concede, do not contain arbitration clauses. The court agrees as to these claims only.

The court need not allow an arbitrator to make this decision because there is absolutely no basis for concluding (explicitly or implicitly) that Marriott agreed to allow an arbitrator to address it. The assertion that Marriott could have agreed to arbitrate claims based on an agreement that does not contain an arbitration clause -- as the parties now agree based on information not available when the Arbitration Demand was submitted -- is "wholly groundless." *See Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014) (allowing a court to decide an arbitrability question that is "wholly groundless," despite a delegation provision). And the court makes this determination despite the possibility of inefficient separate proceedings occurring simultaneously in different forums (*i.e.*, one in court, and one in arbitration). *See KPMG LLP v. Cocchi*, --- U.S. ----, 132 S. Ct. 23, 26 (2011) ("[W]hen a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to 'compel arbitration of pendent

36

arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'") (quoting *Dean Witter*, 470 U.S. at 217).  To this limited extent, Marriott's Motion is GRANTED, and the Flynn's Motion is DENIED.

## V.  CONCLUSION

The court GRANTS in part and DENIES in part Marriott's Motion for Summary Judgment, Doc. No. 6; and GRANTS in part and DENIES in part the Flynns' Motion to Compel Arbitration.  Doc. No. 10.  The arbitrator must make the initial determination whether the Flynns' Arbitration Demand (including the class allegations) falls within the scope of the identified arbitration provisions in the Timeshare Agreements for the Maui Ocean Club and Ko Olina Beach Club. The arbitration, however, may not proceed as to claims based on Kauai Beach

///

///

///

///

///

///

///

Club Resort and Kauai Lagoons -- Kalanipuu Resort. There being no other issues,

the Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 11, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Marriott Ownership Resorts et al. v. Flynn*, Civ. No. 14-00372 JMS-RLP, Order (1) Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment, or in the Alternative, for Preliminary Injunction, Doc. No. 6; and (2) Granting in Part and Denying in Part Defendants' Motion to Compel Arbitration and Stay Action, Doc. No. 10